## PUBLIC BELT RAILROAD COMMISSION OF N. O. v. NEW ORLEANS COAL & BISSO TOWBOAT CO.

———

(May 9, 1927. Opinion and Decree.)

———

*(Syllabus by the Court)*

1. **Louisiana Digest — Prescription — Par. 78; Carriers—Par. 131.**

A claim against a consignee of several cars of coal for damages, caused by the deliberate cutting of the sides of cars containing the coal is only remotely related to the contract of carriage, and is based, not upon such contract, but upon a tort and the action to recover the damages is one, ex delicto, and prescribed by one year.

Appeal from Civil District Court, Division "B". Hon. M. Boatner, Judge.

Action by Public Belt Railroad Commission of the City of New Orleans against New Orleans and Bisso Towboat Company.

There was judgment for defendant and plaintiff appealed.

Judgment affirmed.

Wm. L. Fayssoux, of New Orleans, attorney for plaintiff, appellant.

Nat. W. Bond, of New Orleans, attorney for defendant, appellee.

WESTERFIELD, J. This is an action by the Public Belt Railroad against a consignee of several cars of coal, claiming damages in the sum of $1332.39. The cause of action is thus stated by counsel for plaintiff:

"The defendant and appellee, the New Orleans Coal and Bisso Towboat Company, had shipped to them from outside of the State of Louisiana and delivered to them by the plaintiff and appellant, the City of New Orleans, by and through the Public Belt Railroad Commission for the City of New Orleans, on different dates during the year of 1920 and 1921, a number of carloads of coal to be unloaded by defendant and appellee, which cars loaded were received by the Public Belt Railroad from its interchange and conveyed loaded to the switch of the New Orleans Coal and Bisso Towboat Company in this city, where said cars were to be unloaded and then thereafter said cars were picked up by plaintiff and appellant and returned to the respective interchange for delivery, as empties, back to the connecting carrier from whom said cars loaded were received by plaintiff and appellant.

"That, while said cars were on the switch of the defendant and appellee to be unloaded and being unloaded, the sides and bottoms of said cars were cut and damaged so as to make repairs necessary thereto before said cars would be delivered to the connecting line or carrier from whom they were received or would be accepted by the connecting line or carrier from whom they were received; that said cars were loaded when they were delivered to the interchange of plaintiff and appellant, and were then inspected and found to be in good order and condition and that the sides and bottoms thereof were not cut or damaged."

Defendant, averring that plaintiff's action was one ex delicto pleaded the prescription of one year which was maintained as to nearly all of plaintiff's claim, as to the remainder, $76.50, plaintiff was non-suited. Plaintiff has appealed.

It is conceded that plaintiff's action is ex delicto, and not ex contractu, the judgment appealed from is correct.

For the purpose of discussion of the plea of prescription we will assume that the cars were damaged by defendant's agents or employees in the manner stated in

the petition, without pausing to consider the extensive testimony in the record for the case was tried on the merits. The cars, therefore, were cut and damaged by defendant's agents while on defendant's switch, being unloaded.

It is argued that the Public Belt is a common carrier; that its service in connection with the delivery of the coal was in interstate commerce and that under the Carmack Amendment an implied contract exists between the consignee and all carriers whether initial, connecting or ultimate.

It may well be conceded that the plaintiff is a common carrier, and, was engaged in interstate commerce (the shipper of the coal resided in Kentucky, where the shipment originated) in delivering the coal to defendant.

The alleged implied contract is quite another matter. We are referred to the following:

"The consignee, in accepting and receiving the goods he made himself a party to the contract between the consignor and the plaintiff (carrier) or entered into an original contract to pay, which took the place of the right of the plaintiff to retain the property until the charges were paid." Corpus Juris, vol. 10, p. 446.

"An action versus a carrier for injury to goods received under a contract of shipment is an action ex contractu and not subject to the Statutes of Limitation of one year." So. Ry. Co. vs. Rosenberg, 30 So. 32.

Whatever may be the effect of the cases cited, we do not believe them applicable here. Perhaps a consignee is a party to a contract of carriage and an action against a carrier for damage to a shipment by a consignee may be brought, ex contractu, against either the initial carrier, under the Carmack Amendment, or against a connecting carrier, alleging negligence. But we are not dealing with a situation of that sort. Here there is no claim by the consignee but by the ultimate carrier against the consignee. The claim is not for freight or demurrage, or for anything directly connected with the contract of afreightment, in fact, very remotely connected with such contract, a claim for damages to property for wantonly cutting the sides of certain railroad cars. Without discussing the question of whether the plaintiff can maintain the suit on behalf of the owner of the cars for the repairs of which it acknowledged responsibility, we are of opinion that defendant, if guilty of the acts charged upon which its alleged responsibility is based, committed a delict, or tort, under Art. 2315 R. C. C., and that this action is barred by the prescription of one year.

The judgment appealed from is affirmed.